Our next case up this morning is 415-0695, People v. McGuire. For the appellant is Susan Wilhelm. You are she, ma'am? For the appellee is Luke McPeel. Ms. Wilhelm, you may proceed. May it please this court and counsel, I'm Susan Wilhelm with the Office of the State Appellate Defender. I represent the defendant, Cody McGuire. Today I'll address the first issue of my brief, the Zaire violation, and how this court can address this issue on appeal. Supreme Court Rule 431B imposes a duty upon the trial court judges to ask all potential jurors whether they both understand and accept four fundamental principles of criminal law, the Zaire principles. But here the trial court judge asked only if the jurors disagreed. Our Supreme Court has found that this manner of questioning is an error, and they've found that repeatedly. The state is asserting, the state is not denying that error occurred here, but they're rather asserting that the error was waived because after questioning each set of jurors on their disagreement with these principles, the court then asked the attorneys if they believed that an error was made. And each time the defense counsel agreed yes. As this court found in People v. Bowens, an attorney may make a tactical decision not to object to otherwise objectionable matters, which waives the appeal on these matters, or it can fail to recognize the objectionable nature of the matter, which results in procedural forfeiture. And here, trial counsel merely failed to recognize the error in the trial court's manner of Zaire questioning. I believe that the error here is more akin to simple forfeiture. You believe, say that again, you believe what? The error here is more akin to forfeiture than to waiver. Okay. And I think that counsel here failed to object to the questioning that there's no evidence that the error was known to counsel, or that this was a tactical move. And the Illinois Supreme Court has addressed this in SEBI, where they point out that no attorney would knowingly give up a fully and properly admonished and instructed jury. And the concern that defense attorneys would merely sit on their hands and allow errors like this to occur, hoping to later get a benefit on appeal, would be fanciful. And here it does seem wholly inconsistent with the actions of the defense counsel, who mounted a very vigorous defense of Cody. So what is your position as to how we should view the discussion that occurred when the trial court asked the lawyer during the voir dire, do you believe that the venue has been properly admonished as the Zaire principles and the defense attorney said yes? I again think that's more akin to forfeiture. Forfeiture, words have meaning. Okay. Forfeiture is a default. You failed to object to certain evidence or you failed to take some other action as opposed to this, which is not a failure at all. I think it's perhaps an unwise position by counsel to have agreed that this is adequate, this is sufficient. The Supreme Court in SEBI says no it isn't. But I don't understand how a procedural forfeiture can be found, a default can be found, from the attorneys being asked this question and saying yes. Okay. And your honor, even if this court does find that it's a case of waiver, this court can still address the error. Under P.V. Downs, in response to a jury question which was asking what percentages to apply to define reasonable doubt, defense counsel affirmatively told the court it couldn't give a definition and the trial court agreed. And that was the instruction given to the jury. But then when he got up to the appellate court, Downs argued that the answer erroneously defined reasonable doubt because it didn't tell the jury to disregard the percentages. Now that's, Downs is clearly a case of waiver. Downs created the error. But the Illinois Supreme Court addressed this as a substantial defect in criminal jury instructions, which are not weighed by failure to make timely objections if the interest of justice require. They're addressed under Supreme Court Rule 451C. And the court in SEBI has found that a ZEHR violation is a ZEHR violation. It impacts the manner in which a jury is instructed to evaluate the evidence. Therefore, this issue of deficient ZEHR admonitions, even if it is weighed, can be addressed by this court under Rule 451C as an instructional error. Is there any difference between 451C and 615A, which is the normal plain error statute? No, Your Honor. In the Downs decision, they say that Rule 51C allows the court to correct grave errors and errors that are so factually close that fundamental fairness requires it be properly instructed. And the Supreme Court went on to say that 451C is coextensive with the plain error clause of 615A. And we construe these rules identically. So that would allow us to apply. Well, in Downs, or People v. Townsall, the Supreme Court wrote that Rule 615A in no way speaks to waivers, namely voluntary relinquishments of known rights. As a result, the appellate court had no authority to forego the administrative convenience of waiver and reach the merits of this defendant's appending claims, as administrative convenience has absolutely nothing to do with the waiver at issue in this case. Downs was an unusual case. It seems to me that the sui generis, dealing with the business of you instruct the jury on reasonable doubt, as opposed to these kinds of issues. In this court, just four years ago, the decision I wrote, People v. Dunlap, we also note that the plain error analysis does not apply to this case. Plain error analysis applies to cases involving procedural default without affirmative acquiescence. When, as here, the defense counsel affirmatively acquiesces to the actions taken by the trial court, the defendant's only challenge may be presented as a claim of ineffective assistance of counsel in collateral attack. You didn't raise that issue, did you? No, I did not. Well, given the consistent statements that this court and others have made about how plain error doesn't apply to waiver but applies to only default, why should we change that position in this case? Okay. First of all, Your Honor, I'd like to go all the way back to Townsell. Okay. You said that was an apprendi error? Yes. That is very different. I mean, you stated that Downs is sui generis. Downs is on point for this, though, because it's talking about instructional error. And instructional error is what we have here. And Downs is a case where they looked and applied a test to review instructional error despite waiver. Well, but Downs is also another aspect. Downs was a case where the Supreme Court reversed the appellate court, and it smacked of its supervisory authority to do so because it really didn't like the appellate court's decision. And the Supreme Court understood that the appellate court decision stands as precedent for trial judges and maybe not binding precedent but authoritative for appellate courts like this one, unless the Supreme Court steps up and says, no, this is wrong. And that's what they did. So it seems to me that until we have that kind of guidance in the Supreme Court, we have no reason to abandon the normal, and I think sensible rule, that if you acquiesce as defense counsel in something that the state or the court is doing, you can't raise that as plain error. I understand that. I would again say, though, Downs is directly on point as instructional error. I would also note that even if this court does view this as waiver, waiver is a limitation on the party's ability to raise an issue, not on this court's ability to consider it. And yesterday I was trying to think of situations that are similar to this, and it's very difficult. What we have here is a Supreme Court rule, a mandate for how to question and instruct the jury, and we have a mandate that's within the trial court's control. And I was trying to think of other situations, and I came up with a couple that are within the trial court's control but can still be influenced somewhat by defense counsel. And one of the things I was thinking of are 604D admonitions. If a trial court defense attorney said, here's our hearing on 604D, oops, I forgot to do my certificate, Your Honor, I'll come in and file it tomorrow, and everybody agrees that's okay, that is not okay. He has violated a Supreme Court rule, and those cases get remanded every single time. The same with appellate admonitions. Well, that's because the Supreme Court has said so. And the Supreme Court has set a rule in 604D. But it hasn't, you know, and maybe if we agreed with the state and affirmed, the Supreme Court would say so in this case too, and then of course our role would be to salute smartly. You know, you make a good argument, Ms. Wilhelm, and this is, we're in kind of an unusual area, and one of the problems is, of course, why don't you trial judges do this right? It's not that tricky. You know, the Supreme Court has said, this is what you ask just to make sure it's understood. It's astonishing that we have sharp judges who seem to say, well, you know, that's what they said, but I think I can do it better. Or faster. So it continues to be a problem. You're right. If this Court does apply the closely balanced prong of the plain error test, I do believe that what we have here are the kind of closely balanced facts that SEBI talks about. And in SEBI they talk about how the closeness of the facts alone are going to establish the prejudice here. What we're looking at here, what the critical factual question is, is whether Cody was justified in his use of force at the very moment of the shooting. And the evidence in that regard is closely balanced. Where there are two opposing versions of events, with no extrinsic evidence presented to corroborate or contradict either version, then we've got two credible versions of the facts and closely balanced evidence. And what we have here is Cody and his brother testifying consistently. They testified that Walton threatened them. He threatened to have his eight brothers come to the house and beat everybody up and take everything. He threatened to kill or smash Cody and David. After Cody dropped his gun, Walton swung at David and started the altercation. Both boys testified that when Walton was on the porch, he told Cody he'd better kill him, or he was going to go get his gun from his car and return and kill them all. Now, we know from the entire record that Walton didn't have a car with him. So to us, that might look unreasonable. But if you're Cody, the facts that you know are that this guy shows up. You're in the house. You're responsible for these kids. Your cousins are passed out. You don't know these teenage girls. No one's going to come and take the boys out of the situation, even though they've been calling and asking their family to either come help them or to get them, take them away from this. But nobody has. Instead, his aunt sends a total stranger, unannounced, who comes into the house, starts ordering the boys around, curses at David, and threatens the boys. And once he was outside, again, he told the boys he would get a gun from his car and kill them. Cody's actions that night have to be seen in light of the facts that he knew that were in his own mind. The only knowledge he had that this man barged in and was violent and started an altercation. And the extrinsic evidence really supports that. Jason Walton had three gunshot wounds that all entered from the front, which is consistent that he was shot while facing Cody, while threatening him. A toxicology exam showed that he had cocaine, marijuana in his system. Aunt Lynette admitted that they had been smoking crack cocaine that night. His blood alcohol level was .126. And there's medical testimony that the alcohol and the cocaine together could have caused his aggressive behavior. And this doesn't contradict the McGuire twins' account of his behavior. As Cody's cousins were asleep by the time Walton came in, the state relies on the testimony of the three teenage girls to tell us what happened during the altercation. The girls consistently say they didn't see Walton threaten or injure Cody, and that Cody was not defending himself or David. And the girls' testimony is very contradictory in their actions and locations. They all three seem to be kind of putting themselves in the middle of it. And you really can't make all of that reconcile. However, they're very consistent on the issue of who was the aggressor, and so their testimony is also plausible and credible under SEBI. So what we have here are two sets of closely balanced facts. And under SEBI, once we have clear error, which the state has not argued that the procedure here is error, and we have closely balanced facts that are not contradicted by extrinsic evidence, when the jury found Cody McGuire guilty. But SEBI was in a default position. Acquiescence wasn't an issue in SEBI. And I'm just, if you do choose to address this under plain error, Your Honor, I would like for you to consider these facts. And especially, I mean, to me, and I know that SEBI doesn't require finding a prejudice, but what we have here is we have a close case where a jury was not properly instructed. And one of the things I love about SEBI is they talk about the scales of justice. And there's errors in giving jurors evidence that's going to tip those scales back and forth. But this is really telling the jurors how to balance those scales, how to put those facts together, that Cody does not have to put on evidence, that Cody does not have to present more evidence, and the state has to present enough evidence to get those scales up. So I would ask that this Court address the trial court's failure to properly do their instructions here as plain error and to reverse his convictions and remand for a new trial. Thank you. Thank you, Counsel. Mr. McNeil. May it please the Court? Counsel. As to the instructions, I'm presuming it wasn't an issue in this case, so I haven't seen the record in a while, but I'm presuming that the jury got the requisite instructions covering all four of the 431B principles in their standard jury instructions. Well, as I understand, the only issue that has been raised is with regard to the voir dire SEBI compliance. Correct. Which is also a distinguishing fact between this case and Downs as far as the quote-unquote instructional error. As for the Rule 31B argument, this was waived by affirmative acquiescence. Defense counsel in this case specifically agreed, expressly agreed, with this exact issue at the trial level. Well, what about this, Mr. McNeil? If we affirm based on the reason you're suggesting, why aren't we inviting judges to continue to disregard what the Supreme Court has said? Don't disregard. I think it's a hard, if we don't say this is affirmative acquiescence, then we are stepping in the shoes of any counsel that expressly agrees to an error at trial and saying, well, he didn't really know. Well, you're right, but here's the problem. The Supreme Court has made it clear, don't be doing it this way, trial judge, and then you won't have to ask for acquiescence from defense counsel with regard to your improper questioning. And they are the highest authority in this state. They said it's improper. Now, there were three strong dissenters who said, no, it didn't require a reversal. I understand all that, but the majority of the Supreme Court says, don't be doing it this way. If we affirm for the reasons you argue, how do we get trial judges to stop it? As far, I mean, I think this judge was even trying to cover all his bases by asking this question, and still he used the wrong word. Well, there's a wonderful lot I like to use in chambers with my law clerks. It's supposed to be a joke. It goes, as a last resort, let's check the statute. Similarly, as a last resort, let's check the rule, if you're the trial judge, and see what it says. Look at that. It says, judge, you shall ask, and you shall ask if they understood, right? You know, it's, and now, as a guy who's spent a lot of time with instructions, IPI instructions, I was chairman of that committee for many years, I was always astonished by, I think, what would be the old Italian expression, chutzpah, of the trial judges throughout the state, who thought, yeah, IPI says X, but, you know, I think I can say it better. I would have the discussion with them. I said, you know how much time the committee put in agonizing over the placement of commas and the precise word here? In the middle of a trial, with input maybe from some people who have been at this maybe for a few years apiece, you're going to correct the IPI instruction, which, as you know, guarantees, pretty much guarantees you're not going to be found in error if you follow it, and just go ahead and do it otherwise? Why would you even think such a thing? Why don't you just pull it off the shelf and use it? And here, the Supreme Court has been concerned about these admonitions in voir dire for a long time. I mean, the Zare case is a long time ago. And the Supreme Court thought, gee, we've said this in Zare, that should be enough. Sure enough, it wasn't. So now they put out a rule that says this is what you do, judge. And sure enough, we got judges say, well, I know the Supreme Court said that, but, you know, I think I can say it better. And we have judges, including this one, who is this, Judge Malik? Not an inexperienced guy who says, yeah, I think you do this better. And here we have this case. And if we affirm, we're going to get more of this? I think that it's, although Zare was a long time ago, I feel like it has been an evolving body, whereas substantial versus strict compliance has been concerned as far as the case law. It's clear now that this exact wording, do you disagree, that's been held to be insufficient for strict compliance with Rule 431B. I think sooner rather than later, it's going to make my job a lot easier, sooner rather than later the trial courts are going to realize that this should be verbatim language to the Supreme Court rule. One always has to admire optimism. Well, I think it's with SETI and with Belknap before that. Digressing for just a moment, it's been 33 years since 113-3.1 was added to the Code of Criminal Procedure providing for the assessment of fees for court appointed counsel to defendants. And it's been at least 30 years since the courts have explained, this is all you have to do. We're going to hold a hearing. I'm going to ask you some questions about all this. And the Supreme Court, to its credit, has really been frustrated by this one. They said, how is this possible that three decades later, we still have judges who can't figure this out at the trial level? So you're telling me I'm going to have 30 more years of fines and fees? I think so. Maybe by the time you retire from this wonderful job, Mr. McNeil. The fines and fees will be squared away by then, maybe? It's possible. Unlikely. But I would stand on the position that this was affirmative acquiescence and a textbook example of that. If this court were to analyze this under plain error, of course, Belknap and Sebi both say the only prong available is the closely balanced evidence prong. Here, if there was any closely balanced evidence, it was in the debate whether this was first degree murder or second degree murder. Clearly, even by defendant's account, I'm guessing we're debating whether his belief was reasonable that at the time of the killing he believed the circumstances would be such that if they existed, it would justify the killing. Even by defendant and his brother's account, there was no imminent danger here. There was never a debate that this guy had a gun. This was two-on-one in a fight. Even if defendant did believe this, it was an unreasonable belief. Of course, the state's witnesses described an account of basically first degree murder. Although it would support first degree murder, it also supports the unreasonableness of any belief that defendant had that this killing was justified. Also, we look at defendant's behavior directly after the shooting. He instantly ran away and hid in a garage. If he believed this was self-defense, believed this was justified, presumably he would have stuck around and told this story. Directly after he was arrested, he was interviewed for over an hour. Never says that Walton threatened him or anything like that. This was overwhelming evidence and clearly not as close as needed under this plain error prong of SEBI. SEBI involved multiple credible witnesses on both accounts, and it involved a direct element of the actual crime. Here, defendant was convicted of the lesser charge, so it's hard to argue that there was close evidence as to this second degree murder charge. Plain error analysis, even if this issue was not waived, should not be found here. Any questions on the sentencing issue or anything? I see none. Thank you, counsel. Ms. Wilhelm? Am I pronouncing that correctly? Wilhelm. Wilhelm. Thank you. I would just note, Your Honor, when you say how do we get the trial judges to stop this, this was spring of 2015. The courts did go back and forth for a while about substantial compliance, strict compliance. Wilmington is 2013. Bell Camp is 2014. Two Illinois Supreme Court cases clearly saying... What was there? Wasn't it like 2002 or something? I forget. I thought there was... 84. Yeah, I was down in the early 80s. Really? Yeah. It just took a very long time to put teeth into it. Goodness. So... And the problem is with, again, disagreed... Is it to say it better or is it to say it faster? But when you ask them just if you disagreed, it leaves out that element of do you understand these? And there's some fascinating language in SEBI about is it almost insulting to ask the jury, do you understand this? But then once you get through a trial and once you get to jury instructions and questions start coming back from the jury, you recognize that concepts that we think are easily understood, should be easily understood, aren't concepts that everyday people who end up serving on a jury worry about, puzzle over in their daily life. And so asking them these very specific things also gives them an opportunity, if they're confused, if they have questions, to raise them early on with the judge. And it's that strict compliance, that question and answer, giving them both opportunities that is required. And I'd just like to address again the issue of closely balanced evidence that my client somehow, by getting second degree instead of first degree, that's all he should have. My client was charged with aggravated battery also during this offense for pistol whipping Mr. Walton. That would have been the first part of this altercation, and the jury acquitted him on that. The jury found that his actions there were justified, were reasonable, and his fear there was justified and reasonable. His reaction wasn't an overreaction. So when we're talking again about whether or not he felt eminent danger when he's on the porch facing Mr. Walton, again, we know the facts because we've had the entire record. We've heard everybody talking, and we've had a chance to put the record together and a statement of facts from that. But if you're Cody McGuire, you're in the middle of nowhere, in a home you've never been in before, in a community you're not familiar with. You don't have a way to leave. And when this man is saying that he has a gun in his car and he's going to come right back and kill you and shoot up, kill you and your brother, he's already threatened to have his brothers come and shoot up the house, eminent danger, can you get the police there in time? There's three girls in that house and his little cousins, his teenage cousins, are both passed out. So I think that when you look at this in terms of what he was thinking, I do believe that the evidence of what he was thinking at that point was closely balanced. And I would ask that this court, again, apply that test and reverse his convictions and remand for a new trial. Thank you, counsel. Thank you, sir.